IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ESTATE OF TONY GRIER                          :
BY ADMINISTRATOR EMMA GRIER      :
                                                            :                    CIVIL ACTION
                          v.                              :
                                                            :                    NO. 07-4224
UNIVERSITY OF PENNSYLVANIA         :
HEALTH SYSTEM, ET AL.                        :


**SURRICK, J.**                                                      **JUNE  11th  , 2009**

<u>MEMORANDUM</u>

     Presently before the Court is Plaintiff's Motion to Amend Complaint.  (Doc. No. 10.)  For the following reasons, the Motion will be granted in part and denied in part.

**I.        BACKGROUND**

     Plaintiff alleges that in 1986, Tony Grier ("Grier") was diagnosed with pulmonary sarcoidosis, a disease that causes inflammation of lung tissue.  (Compl. ¶ 3.)  In 2002, the disease had progressed to the point where Grier was placed on a waiting list to receive a lung transplant.  (*Id.* ¶ 5.)  In January, 2005, a lung became available for transplant after an individual was injured in an accident and was pronounced brain dead at the Lancaster General Hospital.  (Proposed First Am. Compl. ¶¶ 14-15.)  The donated lung was removed from the accident victim and a bronchoscopy was performed in the lung by Gregory Rossini, M.D., to determine suitability for donation.  (Compl. ¶¶ 22-24.)  Grier was informed that the lung donor was a healthy, 18-year-old male.  (*Id.* ¶ 8.)  On January 7, 2005, Grier received the lung transplant at the Hospital of the University of Pennsylvania.  (*Id.* ¶ 11.) The lung transplant was performed by Defendant Alberto Pochettino, M.D.  (*Id.* ¶ 12.)  Before and after the transplant surgery, Grier was under the care of Defendants Robert Kotloff, M.D., and Jeffrey Sager, M.D.  (*Id.* ¶¶ 6, 16.)  A month after the

transplant surgery, on February 7, 2005, Grier's doctors detected a spot on the transplanted lung. (*Id.* ¶ 17.)  On May 28, 2005, Grier was diagnosed as having lung cancer.  (*Id.* ¶ 29.)  Within two months of the diagnosis, on July 16, 2005, Grier died of lung cancer.  (*Id.* ¶ 36.)  It was later determined that the lung donor was not a healthy 18-year-old male, but a 31-year-old female who had smoked cigarettes daily for over a decade.  (Proposed First Am. Compl. ¶ 31.)

After Grier's death, Emma Grier, administrator of the Estate of Tony Grier ("Plaintiff"), retained a law firm to represent the estate in this matter.  No complaint was filed by the law firm. Eighteen months later, on May 21, 2007, Emma Grier hired Dawn L. Jackson, Esquire, to represent the estate.[1]  On May 25, 2007, Jackson filed a Complaint in the United States District Court for the District of New Jersey.  The Complaint named as Defendants the University of Pennsylvania Health System / Hospital of the University of Pennsylvania ("UPenn"); Jeffrey Sager, M.D.; Robert Kotloff, M.D.; Alberto Pochettino, M.D.; and John and Jane Does 1-50. The Complaint contained five counts:  wrongful death (Count I); survival (Count II); medical malpractice (Count III); negligence (Count IV); and intentional infliction of emotional distress (Count V).  On October 1, 2007, Judge Cavanaugh of the District of New Jersey determined that the Eastern District of Pennsylvania was the appropriate venue for this matter and ordered the case transferred pursuant to 28 U.S.C. § 1404(a).  *See* Order, *Estate of Grier,* 07-2475 (D.N.J. Oct. 10, 2007).

Plaintiff has filed the instant Motion pursuant to Federal Rule of Civil Procedure 15 seeking leave to file a First Amended Complaint.  (Doc. No. 10.)  The proposed First Amended

---

[1] On March 24, 2009, Gilbert G. Spencer, Jr., Esquire, entered his appearance for Plaintiff.

Complaint seeks to add two new causes of action:  intentional assault and battery and lack of

informed consent (Count VI); and common law fraud and intentional and/or negligent

misrepresentation (Count VII).  (*Id.*)  The proposed First Amended Complaint also seeks to add

claims for punitive damages to Counts I and II.  (*Id.*)  In addition, the proposed First Amended

Complaint seeks to replace three John Doe Defendants with three proposed named Defendants:

Lancaster General Hospital; Gregory Rossini, M.D.; and the Gift of Life Donor Program.  (*Id.*)

## II.   LEGAL STANDARD

Rule 15(a) provides that "a party may amend its pleading only with the opposing party's

written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2); *see also Zenith Radio Corp. v.*

*Hazeltine Research, Inc*., 401 U.S. 321, 330 (1971); *In re Burlington Coat Factory Sec. Litig*.,

114 F.3d 1410, 1434 (3d Cir. 1997); *Freedom Int'l Trucks, Inc., of N.J. v. Eagle Enters., Inc.*,

182 F.R.D. 172, 174 (E.D. Pa. 1998).  "The court should freely give leave when justice so

requires."  Fed. R. Civ. P. 15(a)(2).  "Indeed, in the absence of any apparent reason '[Rule 15's]

mandate should be heeded.'"  *Freedom Int'l*, 182 F.R.D. at 174 (quoting *Foman v. Davis*, 371

U.S. 178, 182 (1962)).  The Supreme Court has identified a non-exhaustive list of factors that

may justify denying leave to file an amended complaint.  These include "undue delay, bad faith

or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the

amendment, [and] futility of amendment . . . ."  *Foman*, 371 U.S. at 182; *see also Lake v. Arnold*,

232 F.3d 360, 373 (3d Cir. 2000).  "An applicant seeking leave to amend a pleading has the

burden of showing that justice requires the amendment."  *Katzenmoyer v. City of Reading*, 158 F.

Supp. 2d 491, 497 (E.D. Pa. 2001); *see also Freedom Int'l*, 182 F.R.D. at 175 ("The party

seeking leave to amend bears the burden of explaining the reasons for the delay.").

When a party seeks leave to file an amended complaint adding a new claim or naming a

new party after the statute of limitations has expired, the requested leave may only be granted if

the new claims or parties relate back to the filing date of the original complaint.  Rule 15(c)

provides in part:

> (c) Relation Back of Amendments.
>
> (1) When an Amendment Relates Back.  An amendment to a pleading relates back to the date of the original pleading when:
>
>> (A) the law that provides the applicable statute of limitations allows relation back;
>>
>> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>>
>> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>>
>>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>>
>>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

When a party seeks leave to file an amended complaint adding new claims against an

existing party, the applicable provision is Rule 15(c)(1)(B), which requires that the new claims

arise out of the same transaction or occurrence that gave rise to the claims contained in the

4

original complaint. *Finley Assocs., Inc., v. Sea & Pines Consol. Corp.*, 714 F. Supp. 110, 115-16 (D. Del. 1989); *see also Green v. Robinson*, 112 Fed. App'x 165, 168-69 (3d Cir. 2004) (unpublished opinion) ("Rule 15(c)(2) [now 15(c)(1)(B)] applies to amendments which assert a new claim or defense against an existing party . . . .").

When a party seeks to add or substitute a new party, including replacing a "John Doe" defendant with a named defendant, the party seeking leave to amend must demonstrate that all the requirements of Rule 15(c)(1)(C) are satisfied. *See Varlack v. SWC Caribbean, Inc.*, 550 F.2d 171, 174-75 (3d Cir. 1977). Specifically, the moving party must establish that the amended pleading relates to the same conduct or transaction or occurrence set forth in the original complaint; that within the 120-day time period prescribed by Rule 4(m), the proposed new defendant had notice of the action; and that the proposed new defendant knew or should have known that but for a mistake of identity, he or she would have been named in the initial complaint. *See* Fed. R. Civ. P. 4(m) (establishing 120-day time period for service of complaint); *see also Stewart v. Phila. Housing Auth.*, 487 F. Supp. 2d 584, 589 (E.D. Pa. 2007) (stating Rule 15 standard for addition of new party); *Wine v. EMSA Ltd. P'ship*, 167 F.R.D. 34, 36-38 (E.D. Pa. 1996) (same).

## III.   DISCUSSION

### A.   Substitution of "John Doe" Defendants with Named Defendants

Plaintiff now seeks leave to replace three "John Doe" Defendants in the original Complaint with the Lancaster General Hospital, Gregory Rossini, M.D., and the Gift of Life Donor Program. Plaintiff must first demonstrate that each of Defendant "received such notice of the action that it will not be prejudiced in defending on the merits" within the 120-day time

5

period prescribed under Rule 4(m).  *See* Fed. R. Civ. P. 15(c).  Plaintiff must also demonstrate

that each Defendant "knew or should have known that the action would have been brought

against it, but for a mistake concerning the proper party's identity."  *Id.*[2]

The Third Circuit discussed these requirements in *Singletary v. Pennsylvania Department

of Corrections*, 266 F.3d 186, 190-91 (3d Cir. 2001).  With regard to the notice requirement, the

court observed that "notice" under Rule 15 may be actual, constructive, or imputed, and that

imputed notice may be demonstrated by establishing that the proposed new defendant either

shared an attorney or had an "identity of interest" with the originally named defendant.  *Id.* at

197.  Whether the notice is actual, constructive or imputed, "the notice received must be more

than notice of the event that gave rise to the cause of action; it must be notice that the Plaintiff

has instituted the action."[3]  *Id.* at 195.  Moreover, the requirement that there be an absence of

prejudice must be satisfied.  *Id.* at 194.

Here, Plaintiff has offered nothing to suggest that the notice requirement of Rule 15 has

been satisfied as to the proposed new Defendants.  As noted above, Rule 15 places the burden of

establishing the relation back of a proposed amended complaint upon the plaintiff seeking leave

for amend.  *Katzenmoyer*, 158 F. Supp. 2d at 497; *Freedom Int'l*, 182 F.R.D. at 175.  Absent a

showing that the proposed new Defendants had actual, constructive, or imputed notice of this

---

[2] It is undisputed that the claims in the proposed First Amended Complaint arose out of the same transaction or occurrence as those in the original Complaint.

[3] The Advisory Committee Notes to the 2007 Amendment to Rule 15 provide that "[f]ormer Rule 15(c)(3)(A) called for notice of the 'institution' of the action.  [Current] Rule 15(c)(1)(C)(i) omits the reference to 'institution' as potentially confusing.  What counts is that the party to be brought in have [sic] notice of the existence of the action, whether or not the notice includes details as to its 'institution.'"  Fed. R. Civ. P. 15 advisory committee's note.

action, the notice requirement of Rule 15(c)(1)(C)(i) has not been met and Plaintiff's proposed

First Amended Complaint cannot relate back to the date of the original Complaint.  Plaintiff has

not made this showing.  Accordingly, Plaintiff cannot overcome the proposed new Defendants'

statute of limitations defense and its request to amend the Complaint to include as Defendants

Lancaster General Hospital, Gregory Rossini, M.D., and the Gift of Life Donor Program must be

denied.

       **B.**       **New Claims and Punitive Damages**

       The proposed First Amended Complaint alleges that Plaintiff first became aware of

Grier's cancer on May 28, 2005.  (Proposed First Am. Compl. ¶ 50.)  Pennsylvania's statute of

limitations for all of the actions alleged in the proposed First Amended Complaint is two years.

*See* 42 Pa. Cons. Stat. Ann. § 5524.  Plaintiff's original Complaint was filed in the District of

New Jersey on May 25, 2007.  The original Complaint was timely filed.  Plaintiff's proposed

new claims in Count VI and Count VII arise out of the same transaction and occurrence that gave

rise to Counts I through V in the original Complaint, specifically the transplant of the donated

lung to Grier on January 7, 2005.  (*See* Proposed First Am. Compl. ¶¶ 100-12.)  Under Rule

15(c)(1)(B), Plaintiff's proposed Counts VI and VII in the December 24, 2007, proposed First

Amended Complaint relate back to the date of Plaintiff's initial filing on May 25, 2007.  There is

no evidence of dilatory conduct or undue delay on the part of Plaintiff.  Plaintiff represents that

Counts VI and VII as well as the punitive damages claims were based upon discovery produced

just ten days before Plaintiff sought leave to file a First Amended Complaint.  (Doc. No. 20 at 6.)

Any prejudice suffered by the existing Defendants in defending against the proposed new claims

would be minimal.  Discovery has only recently begun in this case, and the discovery necessary

to litigate the new claims will be largely the same as that which will be undertaken in litigating

Counts I through V, as pleaded in the original Complaint.

The last factor to consider before permitting Plaintiff to proceed with Counts VI and VII

is whether amending the Complaint to include those counts would be futile.  The Third Circuit

has counseled that "'[f]utility' means that the complaint, as amended, would fail to state a claim

upon which relief could be granted" and that "[i]n assessing 'futility,' the district court applies

the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *In re Burlington Coat*

*Factory*, 114 F.3d at 1434.  We will therefore determine whether Counts VI and VII state claims

upon which relief can be granted under Rule 12(b)(6).

When considering a Rule 12(b)(6) motion to dismiss, we "accept as true all of the

allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view

them in the light most favorable to the non-moving party."  *Rocks v. City of Phila.*, 868 F.2d 644,

645 (3d Cir. 1989).  To survive a Rule 12(b)(6) motion, "a civil plaintiff must allege facts that

'raise a right to relief above the speculative level on the assumption that all the allegations in the

complaint are true (even if doubtful in fact).'"  *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d

Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (internal citations

omitted)).  When considering a motion to dismiss, we need not credit a party's "bald assertions"

or "legal conclusions."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

     1.    *Count VI*:  *Intentional Assault and Battery, Lack of Informed Consent*

Plaintiff's proposed Count VI is most reasonably construed as stating a claim for failing

to obtain Grier's informed consent before performing the lung transplant surgery.  In

Pennsylvania, performing surgery without a patient's informed consent is a battery.[4]  *See*

*Montgomery v. Bazaz-Sehgal*, 798 A.2d 742, 748 (Pa. 2002) ("A claim that a physician failed to

obtain the patient's informed consent sounds in battery.") (citation omitted); *Morgan v.*

*MacPhail*, 704 A.2d 617, 620 (Pa. 1997) ("The rationale underlying requiring informed consent

for a surgical or operative procedure . . . is that the performance of a surgical procedure upon a

patient without his consent constitutes a technical assault or a battery because the patient is

typically unconscious and unable to object.").

    In *Friter v. Iolab Corp.*, 607 A.2d 1111 (Pa. Super. Ct. 1992), the Pennsylvania Superior

Court explained that historically,

> the doctrine of informed consent has been interpreted by appellate courts of this
> Commonwealth to apply only to surgeons who perform operations without first
> securing the informed consent of the patient.  The unconsented to operation is
> considered a non-consensual touching, thus giving rise to an action by the patient for
> a "technical" battery.

*Id*. at 1113 (citing *Doe v. Dyer-Goode*, 566 A.2d 889 (Pa. Super. Ct. 1989); *Malloy v. Shanahan*,

421 A.2d 803 (Pa. Super. Ct. 1980)).  Traditionally, under Pennsylvania law, physicians are

required to provide patients with "material information necessary to determine whether to

proceed with the surgical or operative procedure or to remain in the present condition."  *Sinclair*

---

    [4] If Plaintiff intended to pursue a claim for assault, such a claim would be futile.  Under
Pennsylvania law, "[a]n assault occurs when an actor intends to cause an imminent apprehension
of a harmful or offensive bodily contact."  *Sides v. Cleland*, 648 A.2d 793, 796-97 (Pa. Super. Ct.
1994) (citing Restatement (Second) of Torts § 21); *see also Cucinotti v. Ortmann*, 159 A.2d 216,
217 (Pa. 1960) (finding that with regard to assault, "the actor must be in a position to carry out
the threat immediately, and he must take some affirmative action to do so").  Plaintiff's proposed
First Amended Complaint does not allege, and the facts alleged cannot reasonably be construed
to imply, that Grier experienced an imminent apprehension of a harmful bodily contact in
connection with his lung transplant surgery on January 7, 2005.  Absent this allegation, Plaintiff
has failed to state a claim of common law assault.

*by Sinclair v. Block*, 633 A.2d 1137, 1140 (Pa. 1993). "The information provided by a physician must give the patient 'a true understanding of the nature of the operation to be performed, the seriousness of it, the organs of the body involved, the disease or incapacity sought to be cured, and the possible results.'" *Bazaz-Sehgal*, 798 A.2d at 748 (quoting *Gray v. Grunnagle*, 223 A.2d 663, 674 (Pa. 1966)).

In 2002, the Pennsylvania legislature codified a physician's duty to obtain informed consent in the Pennsylvania Medical Informed Consent Law, 40 P.S. § 1303.504. The statute provides, in relevant part:

> (a) Duty of physicians. – Except in emergencies, a physician owes a duty to a patient to obtain the informed consent of the patient or the patient's authorized representative prior to conducting the following procedures:
>
>> (1) Performing surgery, including the related administration of anesthesia.
>>
>> (2) Administering radiation or chemotherapy.
>>
>> (3) Administering a blood transfusion.
>>
>> (4) Inserting a surgical device or appliance.
>>
>> (5) Administering an experimental medication, using an experimental device or using an approved medication or device in an experimental manner.
>
> (b) Description of procedure. – Consent is informed if the patient has been given a description of a procedure set forth in subsection (a) and the risks and alternatives that a reasonably prudent patient would require to make an informed decision as to that procedure. The physician shall be entitled to present evidence of the description of that procedure and those risks and alternatives that a physician acting in accordance with accepted medical standards of medical practice would provide.

*Id.* § 1303.504 (a)-(b). The statute further provides that "[a] physician is liable for failure to obtain the informed consent only if the patient proves that receiving such information would

have been a substantial factor in the patient's decision whether to undergo a procedure set forth in subsection (a)."  40 P.S. § 1303.504(d)(1).

Plaintiff's proposed First Amended Complaint alleges facts sufficient to establish a claim for lack of informed consent.  Specifically, Plaintiff alleges that Defendants failed to provide Grier with accurate information with regard to the age, gender, and health of the donor of the transplanted lung.  (Proposed First Am. Compl. ¶ 102.)  If true, a reasonable juror could conclude that Grier was not provided with "a true understanding of the nature of the operation to be performed . . . and the possible results," *Grunnagle*, 223 A.2d at 674, nor "a description of [the] procedure . . . and the risks and alternatives that a reasonably prudent patient would require to make an informed decision . . . ," 40 P.S. § 1303.504(b).  Likewise, a jury could reasonably conclude that "receiving such information would have been a substantial factor in the patient's decision whether to undergo a procedure."  *Id.* § 1303.504(d)(1).  Accordingly, Plaintiff alleges a viable cause of action under Pennsylvania law for failure to obtain informed consent in Count VI of the proposed First Amended Complaint.

In *Friter*, the Pennsylvania Superior Court determined that while a lack of informed consent action traditionally could be brought only against the physician performing an operation, it is possible for such a claim to prevail against a non-physician party so long as a plaintiff can establish the existence of a duty to obtain informed consent on the part of that non-physician party.  607 A.2d at 1115.  The court observed:

> The second major obstacle offered as to why a hospital cannot be held liable in an informed consent action, [sic] is that informed consent is a battery action, and a hospital cannot commit a battery.  However, a review of the definition of a battery reveals that in this instance the hospital can be found to have committed a technical battery.  The Restatement (Second) of Torts, § 18, states that "[a]n actor is subject

11

> to liability to another for battery if (a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person . . . ." In comment (c) to section 18 the meaning of "contact with another's person" is more fully explained. As noted therein, "[i]t is not necessary that the contact with the other's person be directly caused by some act of the actor. All that is necessary is that the actor intend to cause the other, directly or indirectly, to come in contact with a foreign substance in a manner which the other would reasonably regard as offensive."

*Friter,* 607 A.2d at 1115. The court concluded that "under the facts presented in this case, the hospital had assumed a duty, pursuant to FDA regulations, to ensure that [the] patient . . . was made aware of the clinical nature of the procedure and the risks associated with such experimentation . . . ." *Id*. at 1114.

*Friter* was decided before the enactment of P.S. § 1303.504. The Pennsylvania informed consent statute speaks only of a physician's duty to obtain informed consent and is silent as to third parties and non-physicians. After the enactment of the informed consent statute, however, the Pennsylvania Supreme Court and Superior Court discussed *Friter*'s independent duty exception and the unique circumstances of *Friter* that required extension of the duty to a third-party or non-physician. *See Valles v. Albert Einstein Med. Ctr.*, 805 A.2d 1232, 1236 n.9 (Pa. 2002) (noting that because the hospital in *Friter* was involved in a clinical investigation for the FDA, the hospital assumed an independent duty to obtain the patient's informed consent since regulations required the hospital to obtain the informed consent of any patient participating in the study); *Isaac v. Jameson Mem. Hosp.*, 932 A.2d 924, 930 (Pa. Super. Ct. 2007) (noting that *Friter* announced "an exception to the general rule that health care institutions are not liable for lack of informed consent" based on the hospital's participation in an FDA clinical investigation that "specifically assumed a duty to ensure that an informed consent was obtained by any patient participating in the study"). Although we are not dealing with FDA regulations here, we are

dealing with unique surgery that involves the taking of an organ from a donor and transplanting that organ in another human being.  Considering these unique circumstances, we will permit Plaintiff to proceed against all Defendants under an informed consent theory at this juncture. Plaintiff may proceed with discovery in order to determine whether there is a basis upon which to extend the duty to obtain informed consent to a defendant other than Dr. Pochettino.  The parties are free to revisit this issue at the summary judgment stage of these proceedings.

2.     *Count VII:  Common Law Fraud/Intentional and/or Negligent Misrepresentation*

Plaintiff's proposed Count VII alleges causes of action for intentional misrepresentation, fraud, and negligent misrepresentation.  To state a claim of fraud or intentional misrepresentation under Pennsylvania law, a plaintiff must allege:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Gibbs v. Ernst*, 647 A.2d 882, 889 (Pa. 1994); *see also Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999).  "The tort of intentional non-disclosure has the same elements as the tort of intentional misrepresentation except that in a case of intentional non-disclosure the party intentionally conceals a material fact rather than making an affirmative misrepresentation."  *Gibbs*, 647 A.2d at 889 n.12; *see also Boortz*, 729 A.2d at 560.

Plaintiff's proposed First Amended Complaint alleges facts sufficient to state a claim for intentional misrepresentation against Defendants Kotloff and UPenn.  Plaintiff has alleged, *inter alia*, that Defendants Kotloff and UPenn represented to Grier that the transplanted lung he would

receive was from a healthy 18 year-old male.  (Proposed First Am. Compl. ¶¶ 25-31.)  More generally, Plaintiff has alleged that Defendants, collectively, failed to advise Grier of the pain and suffering that he would have to endure and failed to disclose the full extent of their knowledge of the risks associated with the transplant operation.  (*Id.* ¶ 107.)  Plaintiff further alleges that this representation was material to Grier's decision to proceed with the lung transplant, and that Grier relied on the representation in making that decision.  (*Id.* ¶ 27 ("Based on that information, Mr. Grier and his family rushed to Philadelphia so that [Grier] could receive the transplant."); *see also id.* ¶ 109.)

Proposed Count VII also alleges that Defendants Kotloff and UPenn knew that the misrepresentation was made with knowledge of its falsity (*id.* ¶ 108), and that the misrepresentation was "a direct and proximate" cause of Grier's death (*id.* ¶ 110).  Viewed in the light most favorable to Plaintiff, it may be reasonably inferred that Defendants Kotloff and UPenn had the intent necessary to establish a claim of intentional misrepresentation. Specifically, Plaintiff described Defendants' alleged misrepresentation as "intentional" and alleged that Defendants were aware of the falsity of the representations when made.  (*See* Proposed First Am. Compl. ¶¶ 107-08, 112.)  We conclude that Plaintiff has sufficiently pleaded a cause of action for intentional misrepresentation or fraud in Count VII.

To state a claim of negligent misrepresentation, a plaintiff must allege

(1) a misrepresentation of a material fact; (2) the representor must either know of the misrepresentation, must make the misrepresentation without knowledge as to its truth or falsity or must make the representation under circumstances in which he ought to have known of its falsity; (3) the representor must intend the representation to induce another to act on it; and (4) injury must result to the party acting in justifiable reliance on the misrepresentation.

*Gibbs*, 647 A.2d at 890; *see also Boortz*, 729 A.2d at 561.  "[N]egligent misrepresentation differs from intentional misrepresentation in that to commit the former, the speaker need not know his or her words are untrue, but must have failed to make reasonable investigation of the truth of those words."  *Gibbs*, 647 A.2d at 890 (citing Restatement (Second) of Torts § 552).

We find that proposed Count VII sufficiently pleads a claim for negligent misrepresentation against Defendants Kotloff and UPenn.  Plaintiff has alleged a material misrepresentation, made intentionally and/or negligently, which was intended to induce reliance by Grier and ultimately did so.  Plaintiff's proposed negligent misrepresentation claim against Defendants Kotloff and UPenn is not futile, and Plaintiff will be permitted to amend the Complaint to include this theory of liability.

3.    *Punitive Damages*

Finally, Plaintiff's proposed First Amended Complaint seeks to add prayers for punitive damages to Counts I and II.  Under Rule 15, leave to add a request for punitive damages is analyzed under the same standard as leave to amend the complaint.  *See McCarthy v. Komori Am. Corp.*, 200 F.R.D. 507, 508 (E.D. Pa. 2001) (interpreting a motion for leave to add punitive damages claim under Rule 15(a)); *Zygmuntowicz v. Hospitality Inv., Inc.*, 151 F.R.D. 53, 54-55 (E.D. Pa. 1993) (granting leave to amend complaint pursuant to Rule 15(a)); *Interact Accessories, Inc., v. Video Trade Int'l, Inc.*, No. 98-2430, 1999 WL 159883, at *3 (E.D. Pa. Mar. 22, 1999) (same).  Likewise, pursuant to Rule 15(c), a proposal to add a punitive damages claim following the expiration of the limitations period requires that the requested punitive damages relate back to the date of the original complaint.  *See, e.g., Gunnip v. Warner Co.*, 43 F.R.D. 365, 367-68 (E.D. Pa. 1968) (allowing the plaintiff to amend the complaint to add a claim for punitive

15

damages under Rule 15(c) after the expiration of the statutory limitations period because the amendment relied upon the same facts and claims set forth in the original complaint).

Plaintiff's proposed punitive damages claims, based upon the facts alleged in Counts I and II, clearly relate back to the original Complaint. Moreover, at this early stage of litigation, Defendants suffer little if any prejudice in defending against a claim for punitive damages related to Counts I and II. We accept Plaintiff's representation that the decision to seek leave to include punitive damages claims was made pursuant to discovery produced just ten days before it sought leave to file the proposed First Amended Complaint. We decline at this time to find as a matter of law that Plaintiff's proposed punitive damages claims would be futile. Whether punitive damages are warranted requires an inquiry into the specific facts of a case. *See Miller v. Mifflin County Indus. Dev. Auth.*, 465 A.2d 1293, 1296-97 (Pa. Super. Ct. 1983). Plaintiff has alleged facts that, if proven, could lead to the conclusion that Defendants engaged in conduct that was "outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005) (quoting *Feld v. Merriam*, 485 A.2d 742, 747 (Pa. 1984)).

## IV.    CONCLUSION

For these reasons, the Motion will be granted in part and denied in part.

An appropriate Order will follow.

BY THE COURT:


 /s/ R. Barclay Surrick, J.
R. Barclay Surrick, J.

16